# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Arcadio Torres, : 
               Petitioner : 
                : 
          v. :   No. 529 C.D. 2024 
                :   Submitted: April 8, 2025 
Unemployment Compensation Board : 
of Review, : 
             Respondent : 

BEFORE:   HONORABLE RENÉE COHN JUBELIRER, President Judge
             HONORABLE ANNE E. COVEY, Judge
             HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

<u>OPINION NOT REPORTED</u>

MEMORANDUM OPINION BY
PRESIDENT JUDGE COHN JUBELIRER        FILED: May 15, 2025

Arcadio Torres (Claimant) petitions for review, pro se, of the March 14, 2024 Order of the Unemployment Compensation Board of Review (Board), which affirmed the decision of a Referee finding Claimant ineligible for pandemic unemployment assistance (PUA) benefits under Section 2102(a)(3)(A)(ii)(I) of the Coronavirus Aid, Relief, and Economic Security Act of 2020 (CARES Act), 15 U.S.C. § 9021(a)(3)(A)(ii)(I).[1] We affirm the Board's Order.

---

[1] Section 2102(a)(3)(A)(ii)(I) of the CARES Act provides that a claimant must be a "covered individual," which is defined as an individual who

> is otherwise able to work and available for work within the meaning of applicable State law, except the individual is unemployed, partially unemployed, or unable or unavailable to work because--
>
> > (aa) the individual has been diagnosed with COVID-19 or is experiencing symptoms of COVID-19 and seeking a medical diagnosis;
> >
> > (bb) a member of the individual's household has been diagnosed with COVID-19;

**(Footnote continued on next page…)**

# I. BACKGROUND

On July 14, 2021, Claimant filed an application for PUA benefits with an effective date of July 11, 2021. (Bd.'s Finding of Fact (FOF) ¶ 1;[2] Certified Record

> (cc) the individual is providing care for a family member or a member of the individual's household who has been diagnosed with COVID-19;
>
> (dd) a child or other person in the household for which the individual has primary caregiving responsibility is unable to attend school or another facility that is closed as a direct result of the COVID-19 public health emergency and such school or facility care is required for the individual to work;
>
> (ee) the individual is unable to reach the place of employment because of a quarantine imposed as a direct result of the COVID-19 public health emergency;
>
> (ff) the individual is unable to reach the place of employment because the individual has been advised by a health care provider to self-quarantine due to concerns related to COVID-19;
>
> (gg) the individual was scheduled to commence employment and does not have a job or is unable to reach the job as a direct result of the COVID-19 public health emergency;
>
> (hh) the individual has become the breadwinner or major support for a household because the head of the household has died as a direct result of COVID-19;
>
> (ii) the individual has to quit his or her job as a direct result of COVID-19;
>
> (jj) the individual's place of employment is closed as a direct result of the COVID-19 public health emergency; or
>
> (kk) the individual meets any additional criteria established by the Secretary for unemployment assistance under this section[.]

15 U.S.C. § 9021(a)(3)(A)(ii)(I).

[2] The Board expressly adopted the findings of fact in the Referee's March 1, 2023 decision. (*See* Bd.'s Order, 3/14/24, at 1.)

(C.R.) at 3.) In his application, Claimant indicated that he was not self-employed, that his last day of work was on June 4, 2020, and that he was scheduled to begin work but was unable to do so because the business closed as a result of COVID-19. (C.R. at 12.)

On May 18, 2022, the Department of Labor and Industry (Department) issued a Pandemic Unemployment Qualifying Determination notifying Claimant that, pending further investigation, he was qualified to receive PUA benefits effective July 11, 2021. (*Id.* at 19.)

On May 19, 2022, Claimant participated in a telephone interview with the Department regarding his claim. During his interview, Claimant stated that the employer for whom he was scheduled to begin work was "a home repair, tent[ ]setup place" that he believed was named "DH Home Repair & Maintenance," but the company "went under because of C[OVID]." (*Id.* at 32.) Claimant also stated that he has been incarcerated since August 2021. (*Id.* at 33.)

On May 20, 2022, the Department issued a Pandemic Unemployment Disqualifying Determination finding Claimant ineligible for PUA benefits under the CARES Act because his "offer of work was unable to be verified" and he was "not a totally or partially unemployed worker or self-employed individual due to COVID-19[-]related reasons under Section 2102(a)(3)(A)(ii)(I) of the CARES Act." (*Id.* at 39; *see* Bd.'s FOF ¶ 2.)

On June 1, 2022, Claimant appealed to the Referee, who scheduled a telephone hearing for February 27, 2023.[3] On the date of the hearing, however,

---

[3] In his Petition for Appeal, Claimant asserted:

I disagree with the [Department's] determination because it's of no fault of mine that the business went under due to the [p]andemic. I have also proven that the person I was living with (Sharon Drakes) contracted C[OVID-19] and everyone in

**(Footnote continued on next page…)**

Claimant did not appear. On March 1, 2023, the Referee affirmed the Department's determination that Claimant was ineligible for PUA benefits under Section 2102(a)(3)(A)(ii)(I) of the CARES Act. (C.R. at 99.)

Claimant appealed to the Board. On January 8, 2024, the Board remanded the matter to the Referee to obtain testimony and evidence on Claimant's reason for his nonappearance at the prior hearing and on the merits of the case. (*Id.* at 153-54.) The Board also directed that, following the remand hearing, the entire record be returned to the Board for its consideration. (*Id.* at 154.)

On February 1, 2024, the Referee conducted the remand hearing via telephone, at which Claimant appeared and testified. At the hearing, Claimant testified that he has been incarcerated at the State Correctional Institution at Dallas (SCI-Dallas) since September 20, 2021, and has seven months remaining on his sentence. (Notes of Testimony (N.T.), 2/1/24, at 9-10, 13.)[4] He testified that when he applied for PUA benefits, he was working for "Jim Hughes Temp and Light Construction," a "start-up company" that did "light construction and deck work." (*Id.* at 10-12.) Claimant testified that he initially told the Department "a different [company] name, because [he] wasn't sure" and "forgot[] . . . the name of" the company. (*Id.* at 11.) Claimant testified that when he began working for the company in June or July 2021, he was "off the books," but "then [he] got on the books, because [the owner] actually went legit with the whole thing." (*Id.* at 11-12.) Claimant testified that he worked full time at a pay rate of $11 per hour and believed

the home had to be quarantine[d]. I provided all of the requested documents that [were] needed, so I am requesting that this decision be overturned.

(C.R. at 61.)

[4] The record shows that Claimant was initially incarcerated at Lackawanna County Prison before he was transferred to SCI-Dallas. (*See* C.R. at 36 (on May 19, 2022, a Department representative spoke with an officer at Lackawanna County Prison, who verified that Claimant "came in [on] 8/20/21").)

he last worked for the company in August 2021. (*Id.* at 12-13.) Claimant offered no documents into evidence at the hearing.

Claimant also testified to the reason he applied for PUA benefits, as follows:

> [T]he only reason . . . I applied for [PUA benefits was] because I was the only one working in that household at the time[] . . . . So, there was no way – nobody else was – Sharon [Drakes] . . . they didn't allow her to go back to work, and her mother, of course, wasn't working, and the girls were young girls, so it was no one else working besides me. . . . [A]t the time when the pandemic started, nobody wanted to be around nobody. . . . I never actually – I had the virus, but I never actually got sick from it, but everybody in my household was sick from the virus, and I proved that. I sent [the Department] all the documents for the doctors, Sharon's tests[] . . . because that was the immediate person that I was in contact with, so that's what [the Department] wanted, and I sent [them] to [the Department], and that was really it. Like, we had no other means. We were trying to live. Besides trying to get [PUA benefits], and that didn't work out. I end[ed] up losing my house and everything[] . . . .

(*Id.* at 11.)

After the remand hearing and the return of the record to the Board, on March 14, 2024, the Board entered an Order finding good cause for Claimant's nonappearance at the first hearing; adopting and incorporating the Referee's findings of fact and conclusions of law; and affirming the Referee's denial of PUA benefits. The Board determined that Claimant had good cause for his failure to appear "because he was incarcerated [at that time], and the prison was on lockdown." (C.R. at 190.) With regard to the merits, the Board concluded:

> At the remand hearing, [C]laimant claimed he worked in construction, but forgot the name of the company when he filed. [C]laimant claimed his employer was "off the books" but eventually "went legit[."] The Board notes the complete lack of documentation in the record substantiating employment and the Case Note noting the employment was unable to be verified.

(*Id.*)  Claimant now petitions this Court for review.[5]

## II. ANALYSIS

On appeal, Claimant asserts that the Board improperly denied him PUA benefits because he "could not remember a name of [his] previous employer," even though he "showed all proof of why [he] didn't work" due to COVID-19. (Claimant's Br. at 7; Pet. for Rev. at 1.)  Claimant further asserts: "I have mental health [issues] (ADHD)(PTSD)(b[i]polar)" and "to remember something I did in the morning i[s] hard and they want me to remember 3 years ago[;] I'm 55 years old [and] just want a fair shake[,] not [be]cause I couldn't remember."  (Pet. for Rev. at 2.)

To qualify for PUA benefits under the CARES Act, a claimant must be a "covered individual," which is defined, in relevant part, as an individual who is "unemployed, partially unemployed, or unable or unavailable to work" due to one or more of the COVID-19-related circumstances enumerated in the CARES Act.  15 U.S.C. § 9021(a)(3)(A)(ii)(I).  The CARES Act also requires a "covered individual" to "**provide[] documentation to substantiate employment** or self-employment . . . not later than 21 days after the later of the date on which the individual submits an application for [PUA] under this section or the date on which an individual is directed by the State Agency to submit such documentation . . . ."  *Id.* § 9021(a)(3)(A)(iii) (emphasis added).  "Failure to provide the required documentation renders an applicant ineligible for PUA benefits."  *Clark*

---

[5] Our review is limited to determining whether constitutional rights were violated, whether an error of law was committed, or whether the necessary factual findings are supported by substantial evidence.  Section 704 of the Administrative Agency Law, 2 Pa.C.S. § 704.

*v. Unemployment Comp. Bd. of Rev.* (Pa. Cmwlth., No. 853 C.D. 2023, filed Sept. 3, 2024), slip op. at 6 (citing 15 U.S.C. § 9021(a)(3)(A)(iii)).[6]

Here, upon receiving Claimant's application for PUA benefits, the Department made several attempts to verify his employment but was unable to do so. (*See* C.R. at 11 (Department Case Note stating that Claimant's "offer of employment was unable to be verified"); *id.* at 13 (noting that "Claimant has no wages on record"); *id.* at 33 (after Claimant's initial interview, a Department representative noted that "vague information [was] given regarding the prospective employer, not enough to successfully research the legitimacy of the business"); *id.* at 35 (Department employee "[a]ttempted to contact [Claimant's] prospective employer, was informed I had the wrong number").) Moreover, Claimant's evidence on this issue was contradictory and inconclusive. At the time of his application, Claimant stated that he worked for "DH Home Repair & Maintenance," but the company "went under because of C[OVID]." (*Id.* at 32.) At the remand hearing, however, Claimant testified that he worked for "Jim Hughes Temp and Light Construction" and last worked for that company in August 2021. (N.T., 2/1/24, at 11-12.) The Board rejected this testimony, particularly noting "the complete lack of documentation in the record substantiating [Claimant's] employment." (C.R. at 190); *see Russo v. Unemployment Comp. Bd. of Rev.*, 13 A.3d 1000, 1003 (Pa. Cmwlth. 2010) (stating that "the Board is free to reject the testimony of any witness, even uncontradicted testimony"); *Elser v. Unemployment Comp. Bd. of Rev.*, 967

---

[6] In 2020, "[t]he CARES Act was amended to require applicants to provide documentation to substantiate their employment or self-employment. *See* Section 241 of the Continued Assistance to Unemployed Workers Act of 2020, Pub. L. No. 116-260, 134 Stat. 1182. The amendment applies to applications for PUA benefits submitted after December 27, 2020." *Clark*, slip op. at 5. Under Section 414(a) of this Court's Internal Operating Procedures, we may cite an unreported memorandum decision of this Court, issued after January 15, 2008, for its persuasive value. 210 Pa. Code § 69.414(a).

A.2d 1064, 1069 n.8 (Pa. Cmwlth. 2009) ("The Board is the ultimate factfinder in unemployment compensation cases and is empowered to make credibility determinations.").

The record establishes that Claimant provided no documentary evidence to substantiate his employment as required by the CARES Act, and the Department was unable to independently verify his employment. Absent such evidence, the Board properly denied PUA benefits.

### III. CONCLUSION

Claimant did not establish that he was attached to the labor market at the time of the COVID-19 pandemic so as to qualify for PUA benefits under the CARES Act. Claimant also proffered no documentation to verify his employment as required by Section 2102(a)(3)(A)(iii) of the CARES Act, 15 U.S.C. § 9021(a)(3)(A)(iii). Accordingly, we affirm the Board's Order.

_____
RENÉE COHN JUBELIRER, President Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Arcadio Torres,
            Petitioner

            v.

Unemployment Compensation Board
of Review,
            Respondent

:
:
:
:
:
:
:
:
:

No. 529 C.D. 2024

# **O R D E R**

NOW, May 15, 2025, the March 14, 2024 Order of the Unemployment Compensation Board of Review is hereby **AFFIRMED**.

_____
RENÉE COHN JUBELIRER, President Judge